**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A.<br>and OAKLEY, INC., | ) | Case No. 16-cv-08576 |
| | ) | |
| Plaintiffs, | ) | **Judge Gary Feinerman** |
| | ) | |
| v. | ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| ZHANG YIYI, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT DOMAIN
NAMES, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley") (together, "Plaintiffs") submit this Memorandum in support of their *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary transfer of the Defendant Domain Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   STATEMENT OF FACTS ....................................................................................... 2

  A.  Plaintiffs' Trademarks and Products................................................................ 2

  B.  Defendants' Unlawful Activities ..................................................................... 3

III.  ARGUMENT ......................................................................................................... 4

  A.  Standard for Temporary Restraining Order and Preliminary Injunction ........................... 6

  B.  Plaintiffs Will Likely Succeed on the Merits of Their Trademark Infringement and
      Counterfeiting, False Designation of Origin, and UDTPA Claims ................................... 6

  C.  There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the
      Absence of Preliminary Relief........................................................................ 8

  D.  The Balancing of Harms Tips in Plaintiffs' Favor, and the Public Interest Is Served by
      Entry of the Injunction ................................................................................ 9

IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 10

  A.  A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and
      Unlawful Use of Plaintiffs' Trademarks Is Appropriate................................................ 11

  B.  Transferring the Defendant Domain Names to Plaintiffs' Control Is Appropriate ........... 11

  C.  Preventing the Fraudulent Transfer of Assets Is Appropriate ........................................... 12

  D.  Plaintiffs Are Entitled to Expedited Discovery ................................................. 13

V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................... 14

VI.   CONCLUSION........................................................................................................ 14

## MEMORANDUM OF LAW

### I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley") (together, "Plaintiffs") are requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants").   As alleged in Plaintiffs' Amended Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling unauthorized and unlicensed counterfeit products, including eyewear, using counterfeit versions of Plaintiffs' federally registered trademarks (collectively, the "Counterfeit Products"), through various fully interactive, commercial Internet stores operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated counterfeiting operation, and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Products.  The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them.  Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Plaintiffs are forced to file these actions to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.  Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully request that this Court issue *ex parte* a Temporary Restraining Order.

## II.    STATEMENT OF FACTS

### A.  Plaintiffs' Trademarks and Products

Plaintiff Luxottica is a corporation duly organized under the laws of Italy.  Declaration of Erin Lewis (the "Lewis Declaration") at ¶ 3.  Luxottica is, in part, engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear products under federally registered trademarks, including, but not limited to, the RAY-BAN® family of marks.  *Id.*  For generations, the Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN trademarks (collectively, the "Ray-Ban Products").  *Id.* at ¶ 4.  Luxottica and its predecessors began using the RAY-BAN trademarks in 1937 and have continuously sold eyewear under the RAY-BAN and other trademarks (collectively, the "RAY-BAN Trademarks"). Id. at ¶ 6.

Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica.  *Id.* at ¶ 2.  Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products").  *Id.* at ¶ 15.  Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products, including its OAKLEY and other trademarks (collectively, the "OAKLEY Trademarks").  *Id.* at ¶ 17.

The RAY-BAN Trademarks and the OAKLEY Trademarks are collectively referred to herein as "Plaintiffs' Trademarks."  *Id.* at ¶ 24.  The Ray-Ban Products and the Oakley Products are collectively referred to herein as "Plaintiffs' Products."  *Id.* at ¶ 25.

Products bearing Plaintiffs' Trademarks are widely recognized and exclusively associated by customers as products sourced from Plaintiffs. *Id.* at ¶¶ 11 and 23. Typically, at least one of Plaintiffs' Trademarks is included on Plaintiffs' Products. *Id.* at ¶¶ 6 and 19. Plaintiffs' innovative marketing and product design have enabled Plaintiffs to achieve widespread recognition and fame and have made Plaintiffs' Trademarks some of the most well-known in the eyewear industry. *Id.* at ¶¶ 10 and 22. Plaintiffs have expended substantial time, money, and other resources in advertising and otherwise promoting Plaintiffs' Trademarks. *Id.* at ¶¶ 11 and 23. In fact, Plaintiffs have expended millions of dollars annually in advertising, promoting and marketing featuring Plaintiffs' Trademarks. *Id.* at ¶¶ 11 and 19. Plaintiffs' Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. *Id.* Because of these and other factors, Plaintiffs' Trademarks have become famous. *Id.*

Plaintiffs' Trademarks are distinctive when applied to Plaintiffs' Products, signifying to the purchaser that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. *Id.* at ¶¶ 9 and 20. Whether Plaintiffs manufacture the products themselves or license others to do so, Plaintiffs have ensured that products bearing their trademarks are manufactured to the highest quality standards. *Id.* Many of Plaintiffs' Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. *Id.* at ¶¶ 11 and 20. As such, the goodwill associated with Plaintiffs' Trademarks is of incalculable and inestimable value to Plaintiffs. *Id.*

## B. Defendants' Unlawful Activities

The success of Plaintiffs' respective brands has resulted in their significant counterfeiting. *Id.* at ¶ 26. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Plaintiffs have identified thousands of

domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Products to consumers in this Judicial District and throughout the United States. *Id.* Despite Plaintiffs' enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. *Id.* Plaintiffs' well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. *Id.* at ¶ 31. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Amended Complaint.

## III.   ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiffs' respective reputations and the goodwill symbolized by Plaintiffs' Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of Plaintiffs' Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including PayPal accounts. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-8. Courts have recognized that civil actions

4

against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiffs' Trademarks. *See* Amended Complaint at ¶¶ 2, 28, 37, and 38. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Plaintiffs Will Likely Succeed on the Merits of Their Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Plaintiffs' Lanham Act and UDTPA claims involve the

6

same elements. See *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. See 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the mark is likely to cause confusion among consumers. *Id.*

In this case, Plaintiffs' Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. Lewis Declaration at ¶¶ 8, 11, 18 and 20. The registrations for Plaintiffs' Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* The registrations for Plaintiff's Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive rights to use the Plaintiffs' Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiffs have not licensed or authorized Defendants to use any of Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiffs' Products. *Id.* at ¶ 28. Thus, Plaintiffs satisfy the first element of their Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of Plaintiffs' Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by

consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiffs have submitted extensive documentation showing that Defendants are selling Counterfeit Products that look similar to genuine Plaintiffs' Products and use counterfeit marks identical to the Plaintiffs' Trademarks. Both Plaintiffs and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Plaintiffs' Products. Lewis Declaration at ¶¶ 13, 21, 26. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Plaintiffs' Products from Counterfeit Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Plaintiffs' Products to purchase Counterfeit Products instead. In that regard, Defendants use Plaintiffs' word marks in many of their Defendant Domain Names, and they advertise Counterfeit Products that bear Plaintiffs' Trademarks. *Id.* at ¶ 28. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Plaintiffs' Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiffs are likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

### C. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co.*

*v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of Plaintiffs' Trademarks has and continues to irreparably harm Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' respective reputations, loss of exclusivity, and loss of future sales. Lewis Declaration at ¶¶ 34-38. The extent of the harm to Plaintiffs' respective reputations and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Lewis Declaration at ¶ 39.

### D. The Balancing of Harms Tips in Plaintiffs' Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiffs have demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if

preliminary relief is granted, balancing such harm against the irreparable harm Plaintiffs will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiffs' favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiffs' approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiffs seek is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Trademarks Is Appropriate

Plaintiffs request a temporary injunction requiring the Defendants to immediately cease all use of Plaintiffs' Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to Plaintiffs' Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of Plaintiffs' Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiffs are currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Transferring the Defendant Domain Names to Plaintiffs' Control Is Appropriate

As part of the TRO, Plaintiffs also seek temporary transfer of the Defendant Domain Names to Plaintiffs' control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). As such, Plaintiffs respectfully request that, as part

of the TRO, the Court require the relevant registries and/or registrars for the Defendant Domain Names to transfer the Defendant Domain Names to Plaintiffs.

## C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiffs request an *ex parte* restraint of Defendants' assets so that Plaintiffs' right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiffs meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiffs are entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiffs' Amended Complaint seeks, among other relief, that Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiffs' request for a prejudgment asset freeze to preserve relief sought by Plaintiffs.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D.

---

[1] Plaintiffs have concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiffs Are Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007). (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiffs respectfully request expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiffs' Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiffs' seizure

and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement, and unfair competition, Plaintiffs respectfully request that this Court require Plaintiffs to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Plaintiffs' businesses, their famous brands, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Products have been manufactured by or emanate from Plaintiffs, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a TRO in the form submitted herewith.

Dated this 1st day of September 2016.          Respectfully submitted,


                                                    /s/ Justin R. Gaudio
                                                    Kevin W. Guynn
                                                    Amy C. Ziegler
                                                    Justin R. Gaudio
                                                    Jessica L. Bloodgood
                                                    Greer, Burns & Crain, Ltd.
                                                    300 South Wacker Drive, Suite 2500
                                                    Chicago, Illinois 60606
                                                    312.360.0080 / 312.360.9315 (facsimile)
                                                    kguynn@gbc.law
                                                    aziegler@gbc.law
                                                    jgaudio@gbc.law
                                                    jbloodgood@gbc.law

                                                    *Counsel for Plaintiffs*
                                                    *Luxottica Group S.p.A and Oakley, Inc.*